889 F.2d 1085
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Vielka DUDLEY, Defendant--Appellant.
v.
Marquita GILLIAM, Defendant-Appellant.
 No. 88-5570.
 United States Court of Appeals, Fourth Circuit.
 Argued April 13, 1989.
Decided Nov. 2, 1989.
 
 Albert James Ahern, Jr., Leo Robnette Andrews, Jr. (Louis Koutoulakos, Varoutsos and Koutoulakos, Wendell C. Robinson on brief) for appellant.
 Regina Hart, Special Assistant United States Attorney (Henry E. Hudson, United States Attorney, Lawrence J. Leiser, Assistant United States Attorney, on brief) for appellee.
 Before WIDENER and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Vielka Dudley and Marquita Gilliam were convicted of two counts from a three-count indictment of failing to report the transportation of more than $10,000 in United States currency into the United States from abroad in violation of Title 31 U.S.C. Secs. 5316, 5322(b) and Title 18 U.S.C. Sec. 2, and for using fraudulent written statements about a matter within the jurisdiction of the United States Customs Office in violation of 18 U.S.C. Secs. 1001 and 2. As the offenses were committed after November 1, 1987, the defendants' sentences were determined using the sentencing guidelines. Both defendants question the constitutionality of the guidelines. Miss Dudley further questions whether the guidelines were properly applied in the determination of her sentence. Also at issue is whether the trial judge should have given certain instructions offered by Miss Dudley on mistake of fact. We affirm.
 
 
 2
 The defendants arrived at Dulles International Airport on December 20, 1987 on a flight from Frankfurt, West Germany. Before checking through United States Customs, the defendants, as were the passengers arriving in the United States on the same flight, were given Customs Form 6059B to complete. Question 10 on the form requires passengers to state whether they are carrying "currency or monetary instruments over $10,000.00 U.S. or foreign equivalent." The instructions on the reverse side state that transportation of any amount of currency is legal; however, the law requires anyone carrying over $10,000 in currency to file Customs Form 4790 with the U.S. Customs Service.
 
 
 3
 Both defendants checked the box indicating "no" in response to Question 10 on Form 6059B. Both replied that they were not carrying over $10,000 in currency when asked by Customs Inspectors. Dudley stated that she had $300 and amended her declaration form to show that she was transporting an air conditioner worth approximately $1000. She then stated that she had nothing further to declare. Gilliam stated that she was carrying only $150 in cash.
 
 
 4
 Upon search of both defendants' belongings and persons, Miss Dudley was found to be in possession of $30,813 and Miss Gilliam was carrying a total of $15,160. The currency was in $5000 bundles. Neither filed Customs Form 4790 which is given to those who check "yes" to Question 10 on Form 6059B. Miss Dudley testified that she did not realize that the language on the form applied to American money, and that she did not read the back of the form. She testified that she had never heard of Form 4790.
 
 
 5
 Count I of the indictment charging the defendants with conspiracy to violate 31 U.S.C. Sec. 5316 was dismissed. Defendants were convicted of failing to report the transportation into the United States of $10,000 in currency under Count II and of making false statements about a matter within the jurisdiction of a federal agency under Count III. Under the sentencing guidelines, each was sentenced to a term of imprisonment of twelve months on Count II and ten months on Count III, to be served concurrently. A two-year term of supervised release was imposed on each count. A special assessment of $100 was further imposed on each defendant.
 
 
 6
 Miss Dudley claims that the district court erred in failing to give the defendants' proposed jury instructions Q and R which raised the issue of mistake of fact as to Counts II and III. It appears that she did not object to the court's omission of the two proffered instructions, after the jury was charged, under Fed.R.Cr.P. 30. After completion of the charge to the jury, the district court inquired of counsel if there were any objections thereto, and received none.
 
 
 7
 The government argues that Miss Dudley's present claims of error, with respect to the refusal of the district court to grant her proposed instructions concerning mistake of fact, are not preserved for review because no further objection was made to the jury charge after it was given to the jury. We do not have to decide this question because the instructions offered were properly refused in any event. While an instruction with reference to mistake of fact may be proper in a case in which knowledge is an element of the crime charged, see United States v. Behenna, 552 F.2d 573, 575-577 (4th Cir.1977), the instructions offered here were each pointed to misunderstanding by Miss Dudley as to the "significance" of the questions on the forms, and were not limited to knowledge. We decline to introduce into the law a defense of mistake of fact due to misunderstanding of the "significance" of such questions.
 
 
 8
 Miss Dudley had the opportunity to raise her defenses to the jury. She testified that she did not understand the language of Question 10, had not read the back of the form, and had failed to see the signs or hear the announcements concerning the form. The instructions given by the district court adequately covered the elements of the offenses charged discussing the government's burden of proving knowledge and intent.
 
 
 9
 Both defendants challenge the constitutionality of the federal sentencing guidelines by which their sentences were determined. Miss Gilliam raises this argument for the first time on appeal. Miss Dudley contested the constitutionality of the guidelines in the district court. The government claims, however, that the defendants have failed to preserve properly the issue for appeal. But, even if neither has preserved the issue, the constitutionality question raised here has been definitively decided adversely to defendants by the Supreme Court in the case of Mistretta v. United States, 57 U.S.L.W. 4102 (U.S. Jan. 18, 1989). See United States v. Bolding, 876 F.2d 21 (4th Cir.1989).
 
 
 10
 Miss Dudley argues, in the alternative, that the district court misapplied the guidelines in determining her sentence. She contends that the district court erred in determining a base offense level of 13 on Count II instead of a level of 5 under Sec. 2S1.3(a)(1)(A)-(C). That section requires a base offense level of 13 if the defendant (A) structured transactions to evade reporting requirements, (B) made false statements to conceal or disguise the activity, or (C) reasonably should have believed that the funds were proceeds of criminal activity. Otherwise, the base offense level is 5. Defendant argues that her base offense level should be 5 as two or more of the requirements under Sec. 2S1.3(A)-(C) were not met. The district court found that defendant met (B) and that only one of the three requirements need be met to give the higher base level. We agree with the district court that the requirements should be read in the disjunctive. Each element is a distinct and separate activity, the performance of which should enhance the base level.
 
 
 11
 Miss Dudley also argues that the false statements used to meet (B) are those for which she was indicted and found guilty under Count III. The district court pointed out, however, that the requirements of guideline (B) mentioned above were met by the concealment and disguise of her activity by placing the currency in each of two pockets, her boots and her handbag. We think this finding was a substantial compliance with the guidelines' standard. The false statements which were the basis of Count III were the negative answers to Question 10 on Form 6059B. Defendant testified that she made the false statements. Thus, there was no borrowing of false statements as defendant argues to meet the requirement to raise the offense level to 13.
 
 
 12
 Defendant further contests the 4 levels added, in the report of the probation officer, to the base offense level of 6 under Sec. 2F1.1 based on her conviction on Count III. See Guideline 2F1.1(b)(E). The trial court did not address the base level for Count III, however, as the base level for Count III is encompassed in the higher level assigned to Count II as a result of the grouping rules for closely related offenses. Guideline 3D1.2(d). The district judge properly sentenced Dudley relying on the base level determined from the offense of which defendant was convicted under Count II as the conviction and sentence under Count III did not enhance her sentence under the guidelines.
 
 
 13
 The defendant argued at oral argument that the district judge erred by not reducing her base offense level of 13 by 2 as recommended by the probation report for her acceptance of responsibility allowed under Guideline 3E1.1. The district court did not reduce her level by 2 because it did not conclude that conceding the illegal activity to the probation officer after conviction is the "type of acceptance of responsibility that warrants a diminution of the level." We do not think this holding is in error; neither is it factually clearly erroneous.
 
 The judgments appealed from are
 
 14
 AFFIRMED.